NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0287n.06
No. 25-1493

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| GARRY RICHARDSON, | ) | **FILED** |
| Plaintiff-Appellant, | ) | Jul 01, 2026 |
|  | ) | KELLY L. STEPHENS, Clerk |
| v. | ) |  |
|  | ) | ON APPEAL FROM THE |
| CITY OF DETROIT, MICHIGAN, | ) | UNITED STATES DISTRICT |
| Defendant, | ) | COURT FOR THE EASTERN |
|  | ) | DISTRICT OF MICHIGAN |
| SERGEANT MIKE JACKSON, | ) |  |
| Defendant-Appellee. | ) | OPINION |
|  | ) |  |

Before: BOGGS, KETHLEDGE, and THAPAR, Circuit Judges.

BOGGS, Circuit Judge. Garry Richardson alleged that Detroit Police Sergeant Mike Jackson lifted him up and threw him to the ground, causing severe back pain, all because Sergeant Jackson observed Richardson's car positioned in a crosswalk before Richardson finished backing it into a legal parking space. Sergeant Jackson replied that Richardson never legally parked his car and, more importantly, dropped to the ground on his own accord when Sergeant Jackson attempted to arrest him after Richardson refused to provide identification. A jury empaneled to decide Richardson's excessive-force and battery claims considered these competing stories and returned a verdict for Sergeant Jackson. Richardson moved for a new trial on the grounds that the verdict contradicted the weight of the evidence and that the district court committed various evidentiary errors. The district court denied his motion, and we affirm.

## I

This case arises from Sergeant Jackson's arrest of Richardson on the night of September 14, 2019, outside the Sweetwater Tavern in Detroit, Michigan. What began as a dispute over whether Richardson had parked his car legally escalated into an arrest and, allegedly, a takedown maneuver that caused lasting back injuries. With no video evidence of the encounter, the trial testimonies of Sergeant Jackson and Richardson best summarize their dueling accounts.

Sergeant Jackson said that, while on duty with the Detroit Police Department, he observed Richardson park his car "partially like on the sidewalk" and "right past the crosswalk" of an intersection. R. 87, PageID 1888, 1895. This parking maneuver amounted to a civil violation of Michigan's traffic laws. *See* Mich. Comp. Laws § 257.674(1), (4) (West 2019). Had Sergeant Jackson found the car "unoccupied and parked in that manner, [he] would have issued a parking citation" and towed the vehicle. R. 87, PageID 1895. Because Sergeant Jackson saw Richardson in the car, however, he used the "PA" in his squad car to tell Richardson that he could not park there. But Richardson never reparked. Rather, Richardson shouted expletives at Sergeant Jackson and insisted that a Sweetwater Tavern employee had allowed Richardson to park in that spot. Sergeant Jackson then repositioned his car next to Richardson's vehicle, activated his lights, and requested backup. He initiated an "investigatory stop" because he "observed [Richardson] driving," noticed that Richardson had "illegally parked," and Richardson "refused to comply with [Sergeant Jackson's] direction." *Id.* at 1890.

Sergeant Jackson approached Richardson, who had exited his vehicle, and asked for his driver's license. When Richardson replied "to the effect of 'I ain't gotta show you expletive S,'" Sergeant Jackson attempted to place Richardson under arrest. *Id.* at 1891. Suddenly, Richardson dropped to the ground. As Sergeant Jackson explained, Richardson "caused his body to go limp

and he kind of went dead weight and started going to the ground" while shouting for "somebody [to] videotape this." *Ibid.* Sergeant Jackson "tried to hold [Richardson] up," but the fifty-four-year-old officer could not prevent the "200-pound" Richardson from falling. *Id.* at 1892. Sergeant Jackson handcuffed Richardson on the ground and helped him back to his feet, with the support of other officers who had quickly responded to the scene. He arrested Richardson for driving without a license and for several outstanding traffic warrants. Richardson never complained of an injury, and Sergeant Jackson transported him to the Detroit Detention Center (DDC). Sergeant Jackson did not retain his body camera footage because he did not take Richardson's threats to sue him "serious[ly]." *Id.* at 1906.

Richardson's account differed from Jackson's in all particulars. He testified that he was merely in the process of parallel parking his car when Sergeant Jackson told him not to park there. Richardson's "car was running" and "still in reverse" at the time, and Richardson never intended to park in the crosswalk. R. 84, PageID 1388. An employee from the Sweetwater Tavern helped Richardson finish parking in what Richardson believed was a valid spot. He exited his car, and without any notice of Sergeant Jackson's approach or ever hearing a request for identification, Richardson was suddenly grabbed, lifted, and dropped chest-down on the ground. As Richardson testified, "[t]he next thing I knew, my hand was grabbed and I was lifted up and my feet went up, and I landed on my chest and I heard my back go—I heard something snap in my back when I went forward and I landed on my chest and I didn't know what was going on." *Id.* at 1395. Richardson continued that Sergeant Jackson then grabbed his arm, "put his knee in the lower part of [his] back," and handcuffed him. *Id.* at 1396. Richardson added that he was lying face-down on the ground with his breath knocked out of him during this encounter. Richardson experienced a "cold to hot" sensation in his back and a lot of pain. *Id.* at 1398.

Sergeant Jackson lifted Richardson to his feet and searched his pockets. Sergeant Jackson found photo identification but discovered that Richardson lacked a valid driver's license. Richardson pleaded with Sergeant Jackson to be taken to the hospital, but Sergeant Jackson transported him to the DDC. Upon his arrival, Richardson completed a pre-booking questionnaire and answered that he did not have any injuries from his arrest. Richardson explained that he declined to report his back injury because he desired treatment from a "professional medical hospital," not an "inhouse nurse." *Id.* at 1399. He spent the next few hours on a steel bench in a holding cell, constantly readjusting to try to relieve his pain.

Following his release from custody, Richardson returned home and rested for a few hours before deciding to visit the emergency room. Doctors took x-rays and prescribed pain medication and a muscle relaxer. But Richardson's pain in his back and legs persisted over the next several years, even as he sought treatment from various specialists. Eventually, in January 2021, Richardson met with Dr. Jeffrey Wingate, an orthopedic surgeon with a specialty in "spinal reconstruction." R. 85, PageID 1544. Dr. Wingate performed surgery on Richardson on February 9, 2021, and administered pain-relief injections during follow-up treatment. Richardson testified that, even so, he experiences enduring pain and mobility limitations.

Less than two weeks after undergoing surgery, Richardson filed this action pursuant to 42 U.S.C. § 1983 in the Eastern District of Michigan. As relevant here, the complaint alleged that Sergeant Jackson violated Richardson's constitutional rights by using excessive force and that Sergeant Jackson committed battery under Michigan law.[1]

---

[1] The complaint also named the City of Detroit as a co-defendant and asserted several other state-law torts, but the parties stipulated to the dismissal of the City and those claims before trial.

As litigation continued, controversy arose regarding the disclosure of Officer David Taylor as a defense witness. In December 2021, during discovery, the parties stipulated that "several officers" witnessed at least portions of the incident. R. 11, PageID 76. But Sergeant Jackson never identified any officers as potential witnesses until June 20, 2024—two years after the close of discovery, and fewer than 30 days before the scheduled start of trial on July 18—when he listed Officer Taylor as a "May Call" witness. R. 37, PageID 260–61. Richardson moved to strike him from the witness list. The district court declined to do so, but it postponed trial for three months until October 2024 and ordered Sergeant Jackson to make Officer Taylor available for immediate deposition. Richardson deposed Officer Taylor on August 16, and Sergeant Jackson maintained Officer Taylor on his updated final witness list. Richardson did not attempt again to exclude Officer Taylor as a witness, nor did he request any additional discovery regarding Officer Taylor or other previously undisclosed witnesses.

Richardson did, however, file a motion in limine in the days preceding trial. He invoked Rule 403 of the Federal Rules of Evidence in an effort to exclude, among other things, his DDC records (including his booking photograph and pre-booking questionnaire) and copies of several Michigan statutes (including those governing compliance with a police officer's directives, illegal parking, and driving without a license). The district court denied his motions.

Another issue arose at the start of trial on October 30, 2024. During opening statements, defense counsel told the jury that Richardson "made up this event with the hope that you ladies and gentlemen were going to be his golden lottery ticket." R. 83, PageID 1339. Richardson immediately objected, and the district court admonished counsel to "[s]tay away from the lottery tickets." *Id.* at 1340. Richardson did not request a curative instruction. Defense counsel repeated her "golden lottery ticket" line during closing arguments, but this time Richardson did not object.

R. 88, PageID 2029. In both its initial and final jury instructions, the district court told the jury that it should not treat attorney argument as evidence.

In the meantime, the jury heard testimony from the parties themselves and several additional witnesses across four days of testimony. Darnell Hughley, Faradje Wisdom, Shuvarian Wisdom, and Officer Taylor provided eyewitness accounts. Richardson also presented testimony from Dr. Wingate, David King (a police-practices expert), and his own brother, Joe Richardson, Jr. (to testify about Garry's pain and mobility limitations). Sergeant Jackson presented the deposition testimony of medical examiners Dr. Marc Wittenberg and Dr. Donald Garver.

Many witnesses, Richardson included, gave the jury reason to question Richardson's claims. Some testimony contradicted key details of Richardson's description of the incident. Hughley and Shuvarian Wisdom, for example, never saw Sergeant Jackson kneeling on Richardson's back, contrary to Richardson's story. Others presented credibility problems, including Richardson himself, who was impeached at trial for testifying that he "did not want to walk" for a year after his surgery even though he performed "pushups and planks" just a few months afterward. R. 84, PageID 1464–65. The jury also learned of two alternative causes for Richardson's claimed injuries. Richardson had been in a car accident a few months before his surgery, even though he never disclosed that fact to Dr. Wingate during the consultation process. And Sergeant Jackson's medical experts opined that degenerative conditions at least contributed to Richardson's back issues. Perhaps most damaging of all, the jury heard Richardson's own police-practices expert admit that if the jury credited Sergeant Jackson's version of events, then Sergeant Jackson did not use excessive force against Richardson.

The eight-member jury returned a complete defense verdict, and the district court entered judgment for Sergeant Jackson on December 3, 2024. On December 28, Richardson moved for a

new trial under Federal Rule of Civil Procedure 59(a) on the grounds that the jury's verdict was against the weight of the evidence and that Richardson was prejudiced by various evidentiary and procedural errors. The district court denied Richardson's motion on May 2, 2025, and Richardson timely appealed on May 29.

## II

On appeal, Richardson contends that the district court erred in denying his new-trial motion. As he argued below, he asserts that the jury's verdict was "against the great weight of the evidence and was unreasonable." Appellant Br. 26. He also claims that the district court's evidentiary decisions (allowing Officer Taylor to testify and admitting the DDC records and Michigan statutes) and defense counsel's "golden lottery ticket" comments entitle him to a new trial.

The district court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). These reasons include "the verdict being against the weight of the evidence" and "the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 606 (6th Cir. 2018) (citation modified). We review the district court's denial of Richardson's new-trial motion for an abuse of discretion. *Id.* at 602, 606–07. Finding none, we affirm.

## A

We begin with Richardson's theory that the jury's verdict was against the weight of the evidence. "[G]ranting a new trial on this ground is a rare occurrence—it happens only when the verdict is said to be unreasonable." *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012). And this relief is especially inappropriate where the "case came down to a question of who the jury believed," because replacing a jury's verdict with a judge's opinion in that context

raises heightened Seventh Amendment concerns. *Holmes v. City of Massillon*, 78 F.3d 1041, 1047–48 (6th Cir. 1996). This case presents a classic question of credibility, and the jury did not behave unreasonably in believing Sergeant Jackson rather than Richardson.

Substantively, the pivotal issue concerned whether Sergeant Jackson used excessive force against Richardson. This in turn depends on whether Sergeant Jackson had authority to arrest Richardson and used reasonable force to effectuate that arrest. *See Coffey v. Carroll*, 933 F.3d 577, 588 (6th Cir. 2019).[2] A police officer who observes illegal parking may stop and investigate the driver, even if the violation is civil in nature. *United States v. Copeland*, 321 F.3d 582, 593–94 (6th Cir. 2003). The subsequent discovery of an invalid driver's license or outstanding warrants, however minor the infraction, authorizes a warrantless arrest. *Id.* at 593; *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Of course, such minor offenses, on their own, would not authorize the aggressive takedown that Richardson alleges Sergeant Jackson committed. *See Coffey*, 933 F.3d at 588–89. But as even Richardson's police-practices expert conceded, if one credits Sergeant Jackson's view of the facts—that Richardson parked illegally, failed to comply with Sergeant Jackson's demand for identification, and simply went limp and fell when Sergeant Jackson attempted to handcuff him—then no excessive force occurred.

A reasonable jury could side with Sergeant Jackson. Richardson's primary argument to the contrary is that more witnesses, in his view, supported his description of the incident than Sergeant Jackson's. But this reasoning suffers from three defects. First, as the district court instructed the jury, the sheer number of witnesses favoring either party is not controlling. *Cf. Borns*

---

[2] Michigan substantive law governs Sergeant Jackson's liability for Richardson's battery claim even as federal substantive law governs Richardson's constitutional excessive-force claim and federal procedural law governs the application of Rule 59 on both claims. *See Armisted*, 675 F.3d at 994–95. Here, though, there is no daylight between the two bodies of substantive law. In Michigan, "it is well established that an arresting officer may use such force as is reasonably necessary to effect a lawful arrest." *Young v. Barker*, 405 N.W.2d 395, 402 (Mich. Ct. App. 1987). So, if Sergeant Jackson did not use excessive force, he did not commit battery. *Ibid.*

*v. Chrisman*, 167 F.4th 335, 349 (6th Cir. 2026) (citing *Penn. R.R. Co. v. Chamberlain*, 288 U.S. 333, 338 (1933)).  Second, Richardson's witnesses are not as compelling as he portrays.  Many of them either failed to corroborate key aspects of Richardson's testimony or contradicted their own prior testimony—or both, as with Shuvarian Wisdom, who never saw an officer sitting, kneeling, or lying on Richardson's back and testified inconsistently about how many officers took Richardson to the ground.  Appellee Br. 4 (citing video testimony read into the trial record).  Third, Officer Taylor echoed the essential details of Sergeant Jackson's testimony, stating that Richardson's car was "blocking an entire crosswalk" and that Richardson fell to the ground "like dead weight," landing in a seated position rather than on his chest or face.  R. 86, PageID 1798, 1800.

No surviving video footage depicts the encounter.  To fill this void, the jury was entrusted to evaluate the credibility of sharply differing accounts from several witnesses.  We do not believe that they did so unreasonably, let alone that the district court abused its discretion in concluding as much.  *See Harden v. Hillman*, 993 F.3d 465, 476 (6th Cir. 2021) (citation modified) (requiring a "definite and firm conviction" that the district court erred to reverse the denial of a new-trial motion).  The jury's verdict was not against the weight of the evidence.

B

None of Richardson's alternative arguments warrant reversal either.  The district court did not abuse its discretion in any of the evidentiary and trial-management decisions that Richardson contests, and even if it had, Richardson cannot show prejudice.  *See Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 891 (6th Cir. 2004).

*Testimony of Officer Taylor.*  Sergeant Jackson violated the Federal Rules of Civil Procedure by failing to disclose Officer Taylor's identity until within a month of trial.  But the district court cured any prejudice to Richardson by postponing trial and allowing Richardson to depose

Officer Taylor. Richardson never asked for further relief. Given this apparent acquiescence with the district court's solution, and the relatively unsurprising subject and content of Officer Taylor's testimony, there was no abuse of discretion in denying Richardson a new trial.

From the very outset of litigation, a party has an obligation to identify "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed R. Civ. P. 26(a)(1)(A)(i). The party must then timely supplement those initial disclosures when it learns that other individuals possess such information. Fed. R. Civ. P. 26(e)(1)(A). As litigation progresses, the party must disclose the witnesses it intends to present at trial at least 30 days before trial begins. Fed. R. Civ. P. 26(a)(3). Witnesses not disclosed in compliance with these rules are excluded from testifying at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

As Rule 37's text contemplates, the "exclusion of tardily disclosed evidence is not mandatory." *Miller v. Suburban Mobility Auth. for Reg'l Transp.*, Nos. 24-1478/1503, 2025 WL 1506082, at *6 (6th Cir. May 27, 2025) (citing *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015)). Five factors inform whether to excuse a late disclosure: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Howe*, 701 F.3d at 748 (citation modified). District courts enjoy broad discretion in applying these factors. *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 669 (6th Cir. 2024).

The district court did not abuse its discretion by allowing Officer Taylor's testimony because it took reasonable steps to cure any prejudice that Richardson incurred from Sergeant Jackson's violation of the discovery rules. Upon receiving Richardson's motion to strike Officer Taylor

from the defense's witness list, the district court promptly postponed trial for three months and ordered the defense to make Officer Taylor available for deposition. Richardson took advantage of this opportunity and never again sought to exclude Officer Taylor from testifying at trial, nor did he request to reopen discovery. Richardson's pretrial conduct strongly suggests that the district court's remedy sufficed to cure any prejudice, especially because Officer Taylor's testimony merely echoed Sergeant Jackson's description of events rather than introducing a new set of facts or different legal issues. For the same reason, the actual substance of Officer Taylor's testimony did not spring a great surprise on Richardson, nor did Officer Taylor's corroboration of Sergeant Jackson's account disrupt trial.

We have rejected invitations to second-guess district courts who manage Rule 26 violations by postponing trial and permitting additional depositions to cure the surprise. *See Miller*, 2025 WL 1506082, at *6; *Meat Town Inc. v. Sentinel Ins.*, 852 F. App'x 925, 941–42 (6th Cir. 2021). Richardson offers no authority to the contrary, so we do so again today.

*DDC Records.* The district court did not err by admitting Richardson's records from his brief detention at the DDC, including his booking photograph and pre-booking questionnaire, so the district court did not err by denying Richardson a new trial on these grounds.

The district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice" or "confusing the issues." Fed. R. Evid. 403. Rule 403 "is strongly weighted toward admission," and we afford district courts broad discretion in the balancing analysis. *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018). We have recognized the prejudicial dangers of jailhouse records and "mug shots," especially in the criminal context, where they can suggest that the person depicted "is a 'bad guy' who belongs in jail." *United States v. McCoy*, 848 F.2d 743, 745–46 (6th Cir. 1988). But Richardson's booking photo-

graph "does not contain any of the typical indicia of a mug shot." *United States v. George*, 160 F. App'x 450, 456 (6th Cir. 2005). Richardson appears in civilian clothing against a plain backdrop, indistinguishable from a driver's-licensed photograph. This image would not likely cast a "lasting impression" of criminality on the jury. *United States v. Lopez-Medina*, 461 F.3d 724, 749 (6th Cir. 2006). Richardson's pre-booking questionnaire, a typical-looking bureaucratic form, is even less concerning, especially because the jury already knew from other evidence that Richardson was brought to the DDC. The prejudicial value of these records is low.

On the other side of the equation, the records offer sufficient probative value. Although Richardson never claimed an injury to his face or head, he did allege that Sergeant Jackson threw him chest-down and that his face was pressed into the ground when Sergeant Jackson knelt on his back. The booking photograph displays Richardson's face free from apparent injury or bruises, which certainly bears on whether Sergeant Jackson applied the force Richardson described, even if it sheds little light on whether Richardson had a back injury. On that latter point, Richardson's denial of any back injury on his pre-booking questionnaire offers obvious probative value. No error occurred with respect to these records, let alone one requiring a new trial.

*Michigan Statutes.* The district court also did not abuse its discretion in admitting copies of Michigan statutes relating to compliance with a police officer's directives, illegal parking, and driving without a license. Richardson objected to these records under Rule 403, asserting that they risked conflating a trial about excessive force with one about parking violations. True, the ultimate issue was whether Sergeant Jackson used excessive force, but an important antecedent question concerned whether Sergeant Jackson could lawfully stop, investigate, and arrest Richardson. As we discussed above, that depended on whether Richardson parked illegally, complied with Ser-

geant Jackson's directives, and provided valid identification. The challenged statutes were highly relevant for that assessment, so their admission does not support reversal.

*Improper Statements.* Finally, defense counsel's two references to a "golden lottery ticket" do not support a new trial. We note at the outset that we can entertain this argument even though Richardson did not move for a new trial based on this known misconduct until after the jury began to deliberate. *Park West Galleries, Inc. v. Hochman*, 692 F.3d 539, 543 (6th Cir. 2012). Nevertheless, the district court did not abuse its discretion in denying Richardson a new trial based on these two comments, only one of which prompted Richardson to object.

We consider whether counsel's comments were improper based on the totality of the circumstances, including the nature and frequency of the comments, and reverse for misconduct only if there is a reasonable probability that it affected the jury's verdict. *Balsley v. LFP, Inc.*, 691 F.3d 747, 761 (6th Cir. 2012). A failure to object at trial heightens the degree of prejudice the movant must show to obtain a new trial. *Bridgeport Music, Inc. v. Justin Comps Publ'g*, 507 F.3d 470, 478 (6th Cir. 2007). Similarly, a new trial is less appropriate where the district court instructs the jury that statements of counsel are not evidence. *Michigan First Credit Union v. Cumis Ins. Soc., Inc.*, 641 F.3d 240, 250–51 (6th Cir. 2011).

Here, Richardson objected to the first reference of a "golden lottery ticket" during opening statements, but not to the second reference during closing arguments. And on neither occasion did Richardson request a special curative instruction. The district court issued standard instructions at the outset and close of trial that counsel's statements are not evidence; the fact that Richardson never sought further relief during trial suggests that he believed that those measures would suffice. Moreover, we have previously found that similar comments suggesting that the opposing party has taken a bad-faith position at trial did not cause the requisite prejudice to warrant a new trial. *See*

*Bridgeport Music*, 507 F.3d at 478–79 (declining to order a new trial based on counsel's comments that the defendant was a "multi-million dollar company" that was trying to "pull a fast one on the six of you"). Ultimately, the district court was best positioned to conclude that counsel's comments did not influence this properly instructed jury, and we see no reason to disturb that finding on appeal.

### III

For the foregoing reasons, we **AFFIRM** the district court's judgment.